```
               IN THE UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF HAWAII

DONALD J. "SKIP" RILEY, JR.,,  )   CIVIL NO. 14-00135 LEK-RLP
                               )
          Plaintiff,           )
                               )
     vs.                       )
                               )
NATIONAL ASSOCIATION OF        )
MARINE SURVEYORS, INC.;        )
SOCIETY OF ACCREDITED MARINE   )
SURVEYORS, INC.; JOHN DOES 1-  )
50; JANE DOES 1-50; DOE        )
PARTNERSHIPS 1-50; DOE         )
CORPORATIONS 1-50; DOE         )
ENTITIES 1-50; AND DOE         )
GOVERNMENTAL UNITES 1-50,,     )
                               )
          Defendants.          )
_____)
```

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT
SOCIETY OF ACCREDITED MARINE SURVEYORS, INC.'S
MOTION TO DISMISS COMPLAINT FILED MARCH 17, 2014; AND
<u>TRANSFERRING CASE TO THE MIDDLE DISTRICT OF FLORIDA</u>**

Before the Court is Defendant Society of Accredited Marine Surveyors, Inc.'s ("SAMS") Motion to Dismiss Complaint Filed March 17, 2014 ("Motion"), filed on April 25, 2014.[1]  [Dkt. no. 6.]  Plaintiff Donald J. "Skip" Riley, Jr. ("Plaintiff") filed his memorandum in opposition on June 16, 2014, and SAMS

---

[1] SAMS also filed its "Errata Regarding Page 2 of the Memorandum in Support of Motion to Dismiss Complaint Filed March 17, 2014, Filed April 25, 2014 [ECF 6]" ("Errata") on April 25, 2014.  [Dkt. no. 8.]  On June 13, 2014, Defendant National Association of Marine Surveyors, Inc. ("NAMS") filed its statement of no opposition.  [Dkt. no. 19.]

filed its reply on June 23, 2014.[2]  [Dkt. nos. 20, 25.] This matter came on for hearing on July 7, 2014.  After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, SAMS's Motion is HEREBY GRANTED IN PART AND DENIED IN PART, and the case is HEREBY TRANSFERRED to the Middle District of Florida for the reasons set forth below.

**BACKGROUND**

On March 17, 2014, Plaintiff, a Hawai`i resident and owner of a marine surveyor business based in Hawai`i, filed his Complaint against SAMS, a Florida corporation, and NAMS, a Virginia corporation (collectively, "Defendants"), asserting diversity jurisdiction, pursuant to 28 U.S.C. § 1332.  [Complaint at ¶¶ 1-6.]

Plaintiff alleges that he was a member of SAMS and NAMS, from approximately 1988 and 1993, respectively.  [Id. at ¶¶ 7-8.]  On January 31, 2006, R.D. Stewart, assisted by Ward Graessle – who was Plaintiff's competitor and a member of NAMS's ethics committee – filed a grievance against Plaintiff with both NAMS and SAMS ("Stewart Grievance").  [Id. at ¶¶ 11-15.]

---

[2] On June 25, 2014, SAMS also filed its "*First Amended* Reply in Opposition to [ECF No. 20] Plaintiff's Memorandum in Opposition to Motion to Dismiss Complaint Filed March 17, 2014, Filed April 25, 2014" ("Amended Reply").  [Dkt. no. 26.]  The Amended Reply corrects a filing error and, therefore, any discussion of SAMS's reply in this Order refers to the Amended Reply.

Plaintiff alleges that SAMS immediately suspended his membership and NAMS initiated a biased investigation. [Id. at ¶¶ 16, 31.] The Complaint focuses on SAMS's and NAMS's purportedly faulty investigations of the Stewart Grievance, in which Defendants allegedly communicated between each other and colluded, see, e.g., id. at ¶¶ 12, 19, 29, 66, 84-85, while failing to include Plaintiff or provide information to him and otherwise follow their own member agreements and bylaws. The process culminated in Plaintiff's resignation from NAMS, which SAMS used as an admission of guilt and pretext for terminating Plaintiff's SAMS membership. [Id. at ¶¶ 66, 84-85.] Plaintiff alleges that, years later, even after admitting that the investigations were improper, Defendants continued to obstruct Plaintiff's reinstatement. [Id. at ¶¶ 76-110.] In essence, Plaintiff alleges that Defendants blackballed him and that, since he did not belong to SAMS and NAMS, his customers ceased doing business with him, and his company failed.

The Complaint alleges the following claims against both SAMS and NAMS: breach of contract for violating its membership agreements with Plaintiff in pursuing the investigations and effectively terminating his memberships ("Count I"); breach of implied contract for failing to adhere to their own bylaws and rules ("Count II"); continuing breach of contract ("Count III"); breach of the covenant of good faith and fair dealing

("Count IV"); negligent and/or intentional misrepresentation ("Count V"); negligent infliction of emotional distress ("Count VI"); intentional infliction of emotional distress ("Count VII"); injunctive relief ("Count VIII"); and reservation of rights ("Count IX").  [Id. at ¶¶ 111-51.]

Plaintiff seeks the following relief: general, special, consequential, incidental, and actual damages; punitive damages; treble damages; attorneys' fees; pre- and post-judgment interest; and all other appropriate relief.  [Id. at pgs. 30-31, ¶¶ A-F.]

**DISCUSSION**

In the Motion, SAMS argues that Plaintiff's claims against it should be severed from his claims against NAMS, reasoning that Plaintiff improperly joined SAMS, pursuant to Federal Rules of Civil Procedure 20 and 21.  SAMS also argues that the Court should dismiss the Complaint as to it for improper venue or, in the alternative, transfer the case to the Middle District of Florida, where SAMS is headquartered.  [Mem. in Supp. of Motion at 1-2 (as modified by Errata at 2).]  The Court considers each of these arguments in turn.

I. **Misjoinder**

SAMS argues that it and NAMS are "completely separate entities" with different officers, bylaws, mainland locations, and investigation procedures, and allowing joinder of Plaintiff's claims against Defendants permits Plaintiff to improperly create

diversity jurisdiction in the district where he resides.  [Id. at 5-6.]

This Court, however, does not read the Complaint as a sham to create diversity jurisdiction.  Rather, viewed in the light most favorable to Plaintiff, the Complaint alleges a conspiracy between Defendants to harm Plaintiff.  See Lilly v. ConAgra Foods, Inc., 743 F.3d 662, 664 (9th Cir. 2014) ("All well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." (citation and internal quotation marks omitted)).  For example, on March 21, 2006, SAMS's ethics committee chair, Jim Sepel, advised NAMS board member James E. Wood of details regarding SAMS's plan to terminate Plaintiff's membership; [Complaint at ¶ 29;] and on June 7, 2007, SAMS admitted to Plaintiff that its termination of Plaintiff's SAMS membership was based on Plaintiff's resignation from NAMS [id. at ¶ 66].  This shows that, if the allegations in the Complaint are accepted as true, Defendants' decisions were not made independently, and Plaintiff's claims against Defendants are intertwined.

Further, even if the investigations were not actively coordinated, Plaintiff's claims against Defendants arise from the same series of transactions, and involve common issues of fact and law.  Federal Rule of Civil Procedure 20(a)(2) provides, in

pertinent part, "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them . . . arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Plaintiff's claims against SAMS and NAMS were both set in motion by a common set of facts, and involve parallel and interrelated investigations, which resulted in what Plaintiff alleges is a single harm.  The Court finds that the claims against SAMS and NAMS arise from the same series of transactions and there will likely be common issues of fact and law.  Thus, this is not a case of improper joinder, for which severance is available under Rule 21.  See Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997) ("If the test for permissive joinder is not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance." (citations omitted)).  The Court, therefore, DENIES the Motion insofar as SAMS moves for severance of Plaintiff's claims against it based on misjoinder.

**II.  Improper Venue**

SAMS argues that venue in this district is improper because SAMS has no presence in Hawai`i and the events giving rise to the Complaint occurred in Florida.  [Mem. in Supp. of Motion at 5; Amended Reply at 4-11.]

6

> 28 U.S.C. § 1391(b) provides, in relevant part,
>
> A civil action may be brought in --
>
>> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [or]
>>
>> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]
>
> The statute defines residency, in pertinent part, as follows:
>
>> For all venue purposes --
>>
>> . . .
>>
>> (2) **an entity** with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, **shall be deemed to reside**, if a defendant, **in any judicial district in which such defendant is subject to the court's personal jurisdiction** with respect to the civil action in question and, if a plaintiff, only in the judicial district in which it maintains its principal place of business . . .

28 U.S.C. § 1391(c) (emphases added).

### A. Residency

SAMS argues that the Court cannot consider it a resident for venue purposes because it is not subject to personal jurisdiction in Hawai`i. The Court agrees.

Regarding proving personal jurisdiction over a defendant, this district court has explained:

> The district court considers two factors

before exercising personal jurisdiction over a nonresident defendant in a diversity of citizenship case: "(1) whether an applicable state rule or statute potentially confers jurisdiction over the defendant; and (2) whether assertion of such jurisdiction accords with constitutional principles of due process." Flynt Distrib. Co. v. Harvey, 734 F.2d 1389, 1392 (9th Cir. 1984). "The jurisdictional inquiries under state law and federal due process merge into one analysis" when, as here, the state's long-arm statute is "co-extensive with federal due process requirements." Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991). See Cowan v. First Ins. Co. of Hawaii, 61 Haw. 644, 649, 608 P.2d 394, 399 (1980) (Hawaii's long-arm statute, Haw. Rev. Stat. § 634–35, was adopted to expand the jurisdiction of Hawaii's courts to the extent permitted by the due process clause of the Fourteenth Amendment). Accordingly, personal jurisdiction over [the defendant] depends on federal due process requirements.

   The Due Process Clause protects a person's "liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471–72, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). The Due Process Clause requires that defendants have "certain minimum contacts with [Hawaii] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316, 66 S. Ct. 154; Data Disc, Inc. v. Systems Tech. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977). The minimum contacts required mean that the defendant must have purposefully availed itself of the privilege of conducting activities within the foreign jurisdiction, thereby invoking the benefits and protections of the foreign jurisdiction's laws. See Asahi Metal Indus. Co. v. Sup. Court of Cal., Solano County, 480 U.S. 102, 109, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987). In applying Due Process Clause requirements, courts have created two jurisdictional concepts —

>	general and specific jurisdiction.
>
>	A court may exercise general jurisdiction over the defendant when the defendant is a resident or domiciliary of the forum state, or the defendant's contacts with the forum state are continuous, systematic, and substantial. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-16, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); Data Disc, 557 F.2d at 1287 ("If the nonresident defendant's activities within a state are 'substantial' or 'continuous and systematic,' there is a sufficient relationship between the defendant and the state to support jurisdiction even if the cause of action is unrelated to the defendant's forum activities."). . . .
>
>	Specific jurisdiction, on the other hand, may be found when the cause of action arises out of the defendant's contact or activities in the forum state.  See Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991); Data Disc, 557 F.2d at 1287. To ensure that the exercise of specific jurisdiction is consistent with due process in this particular case, this court must be satisfied that the following have been shown:
>
>>		1) the nonresident defendant must have purposefully availed himself of the privilege of conducting activities in the forum by some affirmative act or conduct; 2) plaintiff's claim must arise out of or result from the defendant's forum-related activities; and 3) exercise of jurisdiction must be reasonable.
>
>	Roth, 942 F.2d at 620-21.

Maui Elec. Co. v. Chromalloy Gas Turbine, LLC, 942 F. Supp. 2d 1035, 1041-42 (D. Hawai`i 2013) (some alterations in Maui Elec.) (footnote omitted).  Plaintiff argues that SAMS is subject to both general and specific jurisdiction in Hawai`i.  [Mem. in Opp.

9

at 5-12.[3]]

The Court first considers whether it has specific jurisdiction over SAMS.

> In examining the purposeful availment requirement, this court analyzes "whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff." Roth, 942 F.2d at 621; see also Gray & Co. v. Firstenberg Mach., Co., 913 F.2d 758, 760 (9th Cir. 1990).  However, the defendant need not have been physically present or have had physical contact with the forum state, so long as the defendant's efforts were "purposefully directed" toward a forum resident. Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998) (citing Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995)).

Dinnerman v. Douter Coffee Co., Civil No. 07-00164 SOM-BMK, 2007 WL 1701919, at *4 (D. Hawai`i June 8, 2007).

The test for purposeful availment depends on whether the claim sounds in contract or in tort.  Plaintiff's Counts I-IV

---

[3] As an initial matter, Plaintiff relies on the Declaration of Donald J. "Skip" Riley, Jr. ("Riley Declaration") in arguing that the Court has jurisdiction over SAMS and, in the Amended Reply, SAMS relies on two exhibits and the Declaration of Downing Nightingale, Jr. ("Nightingale Reply Declaration") to rebut the Riley Declaration.  Since the Court considers this evidence, which was neither attached to nor referred to in the Complaint, it treats the portion of the Motion seeking dismissal or transfer for failure of jurisdiction as a motion for summary judgment under Rule 56, and applies summary judgment standards.  See Fed. R. Civ. P. 56(d); Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1041 n.6 (9th Cir. 2010) (when materials are considered outside of the complaint, the "motion should be converted into one for summary judgment").

10

are contract claims, and Counts V-VII are tort claims.[4]  For contract claims, this district court has stated:

> A contract with an effect in the forum state does not, by itself, automatically establish the minimum contacts necessary for the exercise of personal jurisdiction over a nonresident defendant.  Burger King, 471 U.S. at 478.  Instead, a court must examine the circumstances surrounding the contract in determining whether there have been the required minimum contacts.  Accordingly, this court examines "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."  See id. at 479.  "Parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities."  Id. at 473 (quoting Travelers Health Ass'n. v. Virginia, 339 U.S. 643, 647 (1950)).  "Thus, if the defendant directly solicits business in the forum state, the resulting transactions will probably constitute the deliberate transaction of business invoking the benefits of the forum state's laws."  Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 840 (9th Cir. 1986).

Id. at *6.  SAMS has shown that it does not: maintain an office, collect money, sell goods, or own property in Hawai`i; solicit members or market in Hawai`i; or require marine surveyors in Hawai`i to join it.  [Nightingale Reply Decl. at ¶¶ 3, 7-8.]  Further, as of June 2014, SAMS had only six members in Hawai`i.

---

[4] The Court notes that Counts VIII and IX are requests for relief and not independent causes of action.  See, e.g., Algal Partners, L.P. v. Santos, Civil No. 13-00562 LEK-BMK, 2014 WL 1653084, at *2 n.2 (D. Hawai`i Apr. 23, 2014).

[Id., Exh. 1.]

Viewing the evidence in the light most favorable to Plaintiff, there is a genuine dispute as to whether SAMS had a mentorship program in Hawai`i, held a meeting in Hawai`i, and distributed its directory of members in Hawai`i. [Mem. in Opp., Decl. of Lahela H. F. Hite, Exh. A; Riley Decl. at ¶ 3.] Even if these facts were true, however, the Court concludes that they are insufficient to support a finding that SAMS purposefully availed itself of Hawai`i for Plaintiff's contract claims. See Crowley v. Bannister, 734 F.3d 967, 976 (9th Cir. 2013) (at summary judgment, the court "must determine, viewing the facts in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law" (citation and quotation marks omitted)). SAMS does not solicit business in Hawai`i or negotiate in Hawai`i, and any obligations it has in Hawai`i are extremely limited. See Dinnerman, 2007 WL 1701919, at *6. Thus, the Court finds that Plaintiff fails to raise a genuine dispute that SAMS purposefully availed itself of the privilege of conducting business in Hawai`i.

Similarly, the Court finds that SAMS did not purposefully direct its actions, which gave rise to Plaintiff's tort claims, at Hawai`i. The Ninth Circuit has held that to prove purposeful availment in the tort context, "the defendant

12

allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010) (citation and internal quotation marks omitted). There is nothing in the Complaint (or in Plaintiff's supporting documents) that shows that SAMS expressly aimed its actions at the forum state. Thus, the Court finds that Plaintiff fails to satisfy the purposeful direction prong of the specific jurisdiction test.

The Court also finds that Plaintiff's claims do not arise from the forum-related contacts, as required by the second prong of the specific jurisdiction test. "Courts in the Ninth Circuit use a 'but for' test to determine whether a claim arises out of forum-related activities." Trade W., Inc. v. Dollar Tree, Inc., Civ. No. 12-00606 ACK-BMK, 2013 WL 1856302, at *7 (D. Hawai`i Apr. 30, 2013) (citing Menken v. Emm, 503 F.3d 1050, 1058 (9th Cir. 2007)). As SAMS argues, "the only events that took place in Hawaii were the unethical acts of Plaintiff which led to the charges of ethics violations made against" Plaintiff. [Amended Reply at 7.] All other events, including Plaintiff's application for membership, the investigations of the Stewart Grievance, and the revocation of membership, occurred in Florida. Thus, the claims do not arise from any Hawai`i contacts.

13

Finally, since SAMS has no presence in Hawai`i, it has not purposefully injected itself here, most witnesses and evidence are in Florida, and there are alternate forums, it would be unreasonable for this Court to exercise jurisdiction over SAMS under the circumstances of this case. See CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1079 (9th Cir. 2011) (describing the seven factors balanced in determining "whether the exercise of jurisdiction comports with 'fair play and substantial justice' and is therefore reasonable" (citation omitted)). The Court therefore finds that it does not have specific jurisdiction over SAMS.

While specific jurisdiction requires the specific events to arise from contact with the state, general jurisdiction requires contacts that are "continuous and systematic." Helicopteros Nacionales, 466 U.S. at 414–16. Since this Court does not have specific jurisdiction over SAMS here, it follows that it does not have general jurisdiction either. See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004) (holding that the general jurisdiction standard "is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world" (citation omitted)). Since there is no dispute of material fact as to whether the Court has general or specific

14

jurisdiction over SAMS, the Court FINDS that SAMS is not a Hawai`i resident for venue purposes.

### B. Other Grounds for Venue

The Court also rejects the other two potential grounds for venue.  First, Plaintiff does not allege that "a substantial part of the events or omissions giving rise to the claim occurred" in Hawai`i.  Instead, the Complaint shows that most of the events surrounding the investigations occurred in Florida and Virginia.

Second, Plaintiff cannot show that a "substantial part of property that is the subject of the action is situated" in Hawai`i.  The only conceivable property interest in this case is Plaintiff's interest in his SAMS and NAMS memberships.  At the hearing, Plaintiff's counsel argued that case law supports a property interest in Plaintiff's SAMS membership.  Plaintiff, however, does not cite to any such case law in his memorandum in opposition to the Motion, and the Court is not aware of any.  Thus, this basis for venue fails.  Since SAMS is not a resident of Hawai`i, pursuant to 28 U.S.C. § 1391(c)(2), no substantial part of the events occurred in Hawai`i, and there is no property interest at issue in this case, the Court FINDS that venue in this district is not proper.

### C. Transfer

Where venue is improper, "the case must be dismissed or

transferred under § 1406(a)." Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex., 134 S. Ct. 568, 577 (2013). 28 U.S.C. § 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

The Court finds that this case could have been brought in the Middle District of Florida, specifically, Jacksonville, which is the principal place of business and headquarters of SAMS. Although the record is silent on whether NAMS is subject to personal jurisdiction in the Middle District of Florida (and the Court does not here decide that issue), the Court finds that a substantial part of the events occurred in that district, and thus venue is proper there.[5] Further, the Court FINDS that transfer would be in the interests of justice.

Thus, the Court HEREBY GRANTS the Motion insofar as SAMS moves to transfer venue on the basis of improper venue, and

---

[5] Even if the Court found that there were insufficient events giving rise to the claim in Florida or in Virginia, there would be venue in the Middle District of Florida under 28 U.S.C. § 1391(b)(3), since SAMS is subject to jurisdiction there. See 28 U.S.C. § 1391(b) ("A civil action may be brought in – . . . (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.").

16

DENIES the Motion insofar as SAMS moves to dismiss the Complaint on that basis.  The Court therefore TRANSFERS VENUE to the United States District Court for the Middle District of Florida for further proceedings.

### CONCLUSION

On the basis of the foregoing, SAMS's Motion to Dismiss Complaint Filed March 17, 2014, filed on April 25, 2014, is HEREBY GRANTED IN PART AND DENIED IN PART.  The Court ORDERS the Clerk of Court to TRANSFER VENUE of this case to the United States District Court for the Middle District of Florida no earlier than thirty (30) days from the date of this Order.  The Clerk of Court shall close the case thereafter.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, July 21, 2014.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**DONALD J. SKIP RILEY VS. NATIONAL ASSOCIATION OF MARINE SURVEYORS, INC., ET AL; CIVIL 14-00135 LEK-RLP; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT SOCIETY OF ACCREDITED MARINE SURVEYORS, INC.'S MOTION TO DISMISS COMPLAINT FILED MARCH 17, 2014; AND TRANSFERRING CASE TO THE MIDDLE DISTRICT OF FLORIDA**